**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**EMMERICH NEWSPAPERS, INC.** **PLAINTIFF**

**v.** **CASE NO: 2:26-CV-00057-TBM-RPM**

**GOOGLE LLC** **DEFENDANT**

---

**HEARING AND ORAL ARGUMENT REQUESTED**

# DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT II OF THE COMPLAINT

---

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. Emmerich Fails to Plead That Google Removed CMI from Its Images. ............................ 2

II. Emmerich Has Not Pleaded and Cannot Plead That Google Knew or Had Reasonable Grounds to Know That Its Supposed Actions Would Aid or Conceal Infringement. ........ 8

   A. Emmerich Is Not Exempt From § 1202(b)'s Second Scienter Requirement. ......... 8

   B. Emmerich Cannot Satisfy § 1202(b)'s Second Scienter Requirement. ................ 10

CONCLUSION ........................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
2012 WL 12921035 (C.D. Cal. Aug. 8, 2012)....................9

*Baker v. Putnal*,
75 F.3d 190 (5th Cir. 1996)....................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*Burke v. Hopkins*,
2020 WL 1314487 (S.D. Tex. Feb. 24, 2020)....................6

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000)....................3

*Dow Jones & Co., Inc. v. Harris*,
749 F. Supp. 3d 776 (W.D. Tex. 2024)....................7, 10

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
325 F. Supp. 3d 767 (S.D. Tex. 2017)....................10

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
756 F. Supp. 2d 1352 (N.D. Fla. 2010)....................7

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993)....................3

*Harrington v. Pinterest*,
2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)....................9, 11, 12, 14

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026)....................1, 2, 3, 5, 6, 8

*Huffman v. Activision Publ'g, Inc.*,
2020 WL 8678493 (E.D. Tex. Dec. 14, 2020)....................3

*Intercept Media, Inc. v. OpenAI, Inc.*,
767 F. Supp. 3d 18 (S.D.N.Y. 2025)....................5, 10, 12, 13

*Interplan Architect, Inc. v. C.L. Thomas, Inc.*,
2009 WL 6443117 (S.D. Tex. Nov. 13, 2009)....................10

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999) ....................................................10, 11, 14

*Kipp Flores Architects, L.L.C. v. AMH Creekside Dev., L.L.C.*,
No. 23-50750, Dkt. No. 88-1 (5th Cir. Aug. 21, 2026) ..........................................3, 7

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
2022 WL 1105751 (W.D. Tex. Apr. 13, 2022)..............................................7, 9, 10

*Loeb-Defever v. Strategic Constr., Ltd.*,
2022 WL 22877320 (S.D. Tex. Jan. 27, 2022)....................................................9

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020).........................................................................13

*Oaxaca v. Roscoe*,
641 F.2d 386 (5th Cir. 1981) ........................................................................3

*Recif Res., LLC v. Juniper Cap. Advisors, L.P.*,
2020 WL 5739138 (S.D. Tex. Sept. 24, 2020) ...................................................13

*Shihab v. Complex Media, Inc.*,
2022 WL 3544149, (S.D.N.Y. Aug. 17, 2022)..........................................13, 14

*Stevens v. CoreLogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) ...................................................................9, 11

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ..............................................................7

*United States ex rel. Integra Med. Analytics, L.L.C. v. Baylor Scott & White Health*,
816 F. App’x 892 (5th Cir. 2020) ....................................................................3

**STATUTES**

17 U.S.C. § 1202..........................................................................................1, 7, 9

## INTRODUCTION

Emmerich devotes much of its opposition to arguments that Google has not made. In particular, it defends its copyright infringement claim, even though Google expressly stated it was "not challenging" that claim at this stage. Mot. 1. What Emmerich does not do is overcome the dispositive flaws in its separate claim that Google removed copyright management information ("CMI") from its photos. Google's motion identified two such flaws: (1) that Emmerich has not plausibly alleged that Google actually removed any CMI from Emmerich's images; and (2) that Emmerich has not, and cannot, allege that Google acted with knowledge it was fostering copyright infringement, as required for liability under the governing statute.

On the question of removal, Emmerich misrepresents the federal pleading standard to gloss over a more likely and entirely benign explanation for the appearance of its images on Google News without CMI: that Emmerich makes its images publicly available in a separate location on its websites with no CMI at all. It was ***Emmerich's burden***, in filing its complaint, to "plead facts that, if true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and to rule out obvious alternative explanations for the defendant's conduct." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (cleaned up). Emmerich failed to satisfy *Twombly*'s basic pleading requirement, and no amount of handwaving can fix that failing. By itself, that dooms the claim.

On pleading the requisite state of mind, Emmerich misrepresents the law. It argues that Emmerich need only allege intentional removal of CMI, and can ignore the second scienter requirement of a § 1202(b) claim: that Google undertook any such removal with the required knowledge that its conduct would "induce, enable, facilitate, or conceal" copyright infringement. *See* 17 U.S.C. § 1202(b). Emmerich has pleaded no facts at all on that point, and offers nothing in

opposition to justify its failure. Moreover, as Google showed in its motion, the law forecloses the claim that Google had the requisite scienter. Google News prominently displays the source of Emmerich's images and links back to Emmerich's websites where additional attribution text is readily available. Emmerich's opposition does not begin to address this dispositive scienter issue.

Because Emmerich has not plausibly alleged CMI removal, nor that Google acted with the requisite state of mind, its CMI-removal claim must be dismissed.

## ARGUMENT

### I. Emmerich Fails to Plead That Google Removed CMI from Its Images.

Emmerich conclusorily pleaded that Google removed CMI from images displayed in Google News, but failed to "rule out [the] obvious alternative explanation." *Hikma*, 146 S. Ct. at 1399 (cleaned up). That alternative is straightforward: Google simply obtains the images from a separate, publicly accessible location on Emmerich's websites where they never contained CMI to begin with. Mot. 9-11. Emmerich's opposition concedes this: "Emmerich publishes its images in two places: the Article URL [with CMI] and the Image URL [without CMI]." Opp'n 1. The complaint fails to account for this lawful alternative, meaning its conclusory removal allegations "[stop] short of the line between possibility and plausibility of entitlement to relief." *Hikma*, 146 S. Ct. at 1399.

Emmerich cannot excuse its pleading failure, instead resorting to mischaracterizing the governing *Twombly* standard. It repeatedly invokes long-overruled cases applying an outdated standard, Opp'n 10, which the Supreme Court rejected nearly twenty years ago. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) ("no set of facts" is "not the minimum standard of adequate pleading to govern a complaint's survival"); *see also*, *e.g.*, Opp'n 9-10 (arguing that a motion to dismiss fails "unless it appears from the pleadings beyond doubt that the plaintiff can prove no set of facts in support of his claim"). Notably, every Fifth Circuit case that Emmerich cites in its

argument for its superannuated pleading standard pre-dated *Twombly*. *See* Opp'n 8-9.[1] And far from weakening *Twombly's* heightened requirement, the Supreme Court recently underscored its teaching that "well-established federal pleading standards" require "more than a sheer possibility that a defendant has acted unlawfully." *Hikma*, 146 S. Ct. at 1399. Rather, a plaintiff must "nudge a claim across the line from conceivable to plausible" by pleading facts that "***rule out obvious alternative explanations*** for the defendant's conduct." *Id.* (cleaned up) (emphasis added); *accord United States ex rel. Integra Med. Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) ("A claim is merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and 'obvious alternative explanation.'").

Emmerich has not done so. The opposition only confirms that Emmerich's service works exactly as Google describes: Emmerich "publishes its images in two places: the Article URL and the Image URL." Opp'n 1; *see also id.* at 4 (admitting that "[i]mages are *always* stored separately from the article content"). Only an image at an Article URL contains "a gutter credit" and "superimposed attribution information"—the supposed CMI that Google allegedly removed. *Id.* at 1. But crawling the images directly from the Image URL—where the images are unmarked by any text—would not entail any CMI removal or implicate the Digital Millennium Copyright Act at all. *See Kipp Flores Architects, L.L.C. v. AMH Creekside Dev., L.L.C.*, No. 23-50750, Dkt. No. 88-1, at 36-37 (5th Cir. Aug. 21, 2026) (liability under § 1202 "require[s] something that was present but is now either not present at all or remains present but has been changed in some way . . . [Plaintiff's] CMI was never present on the [accused copies], so it cannot have been removed or altered. That dooms [the] DMCA claims"); *Huffman v. Activision Publ'g, Inc.*, 2020 WL 8678493,

[1] *See, e.g.*, *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).

at *11 (E.D. Tex. Dec. 14, 2020) ("§ 1202 does not cover the mere failure to add truthful CMI to a copy. Rather this section requires actual alteration or removal of CMI already found on an image.").

Grasping to explain why Google would access the photos with CMI and then remove it, rather than simply accessing the same photos without CMI, Emmerich misstates Google's position. It claims Google "admits" that the Image URL is difficult to access because a user "must" click twice on the image within an Article URL to access the Image URL. Opp'n 1. Google's motion said no such thing, and the assertion is false. Access to the Image URL absolutely does not "necessarily mandate[]" clicking through to it from the Article URL. *Id.* at 3. Emmerich concedes that the image is "***always***" freely available on the public internet at the Image URL, Opp'n 4, so it may be accessed there directly without ever needing to visit the Article URL, Mot. 7. This is readily ascertainable for any Image URL.[2] Emmerich cannot salvage its claim through misrepresentation.

Nor does Emmerich accomplish anything by attacking Google's declarant.[3] Emmerich belittles the Willen Declaration because the declarant is not "an engineer at Google." Opp'n 2-3. But Google does not rely on that Declaration to establish anything about the "process for the creation of Google News," *id.* at 3, to "support [] its claims," *id.* at 2, or to establish a "factual record," *id.* at 3. Instead, and as Emmerich surely understands, the Declaration "simply testifies to the fact that a singular image exists in two places." *Id.* Again, at the pleading stage, it is ***Emmerich's burden*** to plausibly allege that Google crawled the images from the location that

[2] The Court may confirm this fact by visiting any Image URL directly, like the one containing the photo featured in the Complaint: https://www.enterprise-journal.com/sites/default/files/field/image/0212fire%20%284%29.JPG. *See* Mot. 6, 10 n.5.

[3] Emmerich did not respond to Google's Request for Judicial Notice and Incorporation by Reference at Dkt. No. 9. Google similarly does not oppose Emmerich's Request for Judicial Notice and Incorporation by Reference at Dkt. No. 19.

actually had the alleged CMI, so as to "rule out" the more likely alternative explanation that Google crawled the images from the location that did not. *Hikma*, 146 S. Ct. at 1399. All Google needed to do—and all that the Motion to Dismiss and the Willen Declaration did—was to point to the "obvious alternative explanation[]." *Id.*

Emmerich also invokes *Intercept Media, Inc. v. OpenAI, Inc.* to argue that the plausibility standard "does not prevent a plaintiff pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025) (cleaned up). But that case is nothing like Emmerich's. *Intercept* involved allegations that the defendants removed CMI when they trained generative AI systems on ***non-publicly-accessible*** datasets that allegedly contained plaintiffs' news articles. *Id.* at 23. Critically, the plaintiffs did not have access to those datasets. Rather than argue that there was some obvious alternative explanation for the alleged CMI removal, the defendants argued that plaintiffs' information-and-belief allegations were implausible on their face. *Id.* at 30. The court disagreed, finding that the allegations were plausible because of the defendants' "secrecy over the contents of the sets used to train the latest versions of" their AI systems. *Id.* Here, not only did Google raise an obvious alternative explanation, Emmerich has failed to identify which "facts are peculiarly within the possession and control of" Google. Opp'n 10 (quoting *Intercept*, 767 F. Supp. 3d at 30). It is ***Emmerich*** that decides where and in what format its images are available online. It can easily consult its own records—such as server logs on whether Google's crawlers accessed the Image URLs—to refute Google's alternative explanation. That Emmerich offers nothing of substance in response is damning.

Next, Emmerich argues that Google's developer documentation undermines Google's alternative explanation for the appearance of Emmerich images on Google News without CMI. It

does nothing of the sort. If anything, this documentation bolsters the obvious alternative explanation that Google obtains Emmerich's images without CMI, by accessing the Image URLs. As Emmerich tells it, "Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers," and then "analyzes the text, images, and video files on the page, and stores the information in its Google index." Opp'n 2. That is both true and unremarkable. What Emmerich either fails to grasp (or chooses to ignore) is that the Image URL is a "page" that Google crawls, just as the documentation says. Indeed, the document Emmerich cites makes it clear that "page" is just a shorthand for "web page[]." Carroll Decl., Ex. A at 2. Nothing in the developer documentation props up Emmerich's convoluted theory—i.e., that Google undertook the effort to screencapture a smaller version of the image from within the Article URL and remove Emmerich's added text, instead of simply downloading the full version of the image from its home at the Image URL. It certainly does not establish that Emmerich's laborious version of events is "more likely," so its § 1202(b) claim does not "cross the plausibility threshold." *Burke v. Hopkins*, 2020 WL 1314487, at *2 (S.D. Tex. Feb. 24, 2020); *Hikma*, 146 S. Ct. at 1399.[4]

Finally, Emmerich attempts to rewrite the law on § 1202(b). Under its novel theory, as long as there exists ***one*** instance where its images are available alongside CMI, ***any*** subsequent display must include that text—even if the images were freely available and obtained from a different

[4] Ironically, the developer document that Emmerich cites in its opposition ***does*** include extensive instructions explaining how website owners can control Google's crawling and indexing of their websites, and how to remove their webpages and images from Google Search and Google News. *See, e.g.*, Dkt. No. 19-2, at 2-3, (explaining that "Googlebot doesn't crawl all the pages it discovered" because "pages may be disallowed for crawling . . . by the site owner," who can implement "robots.txt rules preventing Googlebot's access to the page"); Dkt. No. 19-3, at 2-3 ("Any news organizations that wish to opt out of Google News can continue to do so" by consulting Google's Help Center, which "provides detailed guidance on using the robots exclusion protocol for Google News," including "simply disallow[ing] Googlebot-news and allow[ing] Googlebot" to "opt out of Google News and stay in Google Search.") Instead of filing this lawsuit, Emmerich could have simply followed these instructions—like thousands of other website owners—if it wished to prevent its articles and images from appearing in Google News.

location without CMI. That Hail Mary flouts all precedent on the issue. It is true that the DMCA defines CMI as certain identifying information "conveyed in connection with copies [] of a work." 17 U.S.C. § 1202(c). But that does not mean that if CMI is conveyed in connection with ***one*** copy of work, then § 1202(b) requires that CMI to be conveyed in connection with ***every*** copy of the work—wherever it might exist. *See Kipp Flores Architects, L.L.C. v. AMH Creekside Dev., L.L.C.*, No. 23-50750, Dkt. No. 88-1, at 36-37 (5th Cir. Aug. 21, 2026), at 34 ("[T]he key question is whether § 1202(b)'s prohibition on removal also creates an affirmative obligation to add CMI where it was not present to begin with . . . [I]t does not.").

*Dow Jones & Co., Inc. v. Harris*, for example, refutes Emmerich's position. There, the court rejected a version of the argument that Emmerich presses here; in the plaintiff's telling, the defendant "must have knowingly removed CMI" from the plaintiff's news articles because some of the defendant's allegedly infringing emails did not contain the CMI that originally accompanied the articles. 749 F. Supp. 3d 776, 788 (W.D. Tex. 2024). But as that court held, that did not mean the plaintiff necessarily ***removed*** any CMI from the articles, and "Section 1202 does not cover the mere failure to add truthful CMI to a copy." *Id.*; *accord Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779-80 (N.D. Cal. 2024); *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010).

Emmerich's position is also at odds with common sense. Consider a photo of an artwork that is on display at a museum alongside a plaque with the artist's name and the work's title, and is available in the gift shop as a poster without the plaque. If a manufacturer were to reproduce the poster, they would not have ***removed*** CMI, under any rational understanding of the term. The manufacturer is not obligated to ***add*** CMI simply because a copy of the artwork somewhere else

has it.[5] To hold otherwise would impose a duty not only to add CMI, but also to search for all other instantiations of the work that might include CMI elsewhere in the world. That is not the law. Of course, Emmerich could add a watermark to every single version of its images on its websites, including at the Image URLs, if it wanted to—just as the artist in the example above could put the work's title directly onto the work itself. But that is not how Emmerich chose to make its images freely available on its websites.

* * *

Google's motion to dismiss identified an "obvious alternative explanation[]" to Emmerich's theory of § 1202(b) liability in its complaint, *Hikma*, 146 S. Ct. at 1399—that Google did not remove CMI from Emmerich's images from the Article URLs, because the images were freely accessible to Google (and anyone else) without any CMI at the Image URLs. Emmerich has failed to carry its burden to plead facts that would show its theory to be more plausible than Google's alternative explanation, much less rule out that alternative explanation. As a result, the Court should dismiss Emmerich's § 1202 claim and need not proceed any further.

## II. Emmerich Has Not Pleaded and Cannot Plead That Google Knew or Had Reasonable Grounds to Know That Its Supposed Actions Would Aid or Conceal Infringement.

### A. Emmerich Is Not Exempt From § 1202(b)'s Second Scienter Requirement.

Emmerich's failure to plead facts plausibly demonstrating CMI removal is sufficient to dispose of its § 1202(b) claim. But its failure to plead facts satisfying the statute's scienter requirement means the claim fails twice over.

As Google has explained, *see* Mot. 8-9, § 1202(b) contains a "double scienter"

[5] Emmerich offers an inapt analogy, comparing obtaining a CMI-less copy of an image where another copy is available with CMI to "simply zooming in on the image as it appears on the [Article URL] close enough to exclude the CMI and then copying the image." Opp'n 3. That framing ignores the critical fact, which Emmerich elsewhere concedes, that there ***is*** a freestanding version of its images available at the Image URLs without any CMI at all.

requirement: a defendant (1) must either "intentionally remov[e] or alter[] CMI without permission from the copyright owner," or "distribut[e] or import[] for distribution . . . works [or] copies of works [] while knowing that CMI has been removed or altered," ***and*** (2) must also "possess the mental state of ***knowing, or having a reasonable basis to know***, that his actions will induce, enable, facilitate, or conceal infringement." *Loeb-Defever v. Strategic Constr., Ltd.*, 2022 WL 22877320, at *10 (S.D. Tex. Jan. 27, 2022) (quoting *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018) (emphasis added)). Accordingly, to plead a § 1202(b) claim, a plaintiff "must allege" that the defendant "kn[ew], or ha[d] reasonable grounds to know" that its actions "will induce, enable, facilitate, or conceal an infringement." *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751, at *4 (W.D. Tex. Apr. 13, 2022) (cleaned up). The case law on this point is legion and unanimous. *See, e.g.*, *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) ("To sufficiently plead a violation of" § 1202(b), "a plaintiff must allege that a defendant" acted "with knowledge that it will induce, enable, facilitate, or conceal an infringement"); *Harrington v. Pinterest*, 2022 WL 4348460, at *8 (N.D. Cal. Sept. 19, 2022) (plaintiff's "failure to plead facts to satisfy the second scienter requirement" is an "independent ground to dismiss the DMCA claim"); *accord* Mot. 8-9, 12.

Emmerich offered nothing on this issue in its complaint, and nothing to excuse its pleading deficiency in its opposition. Remarkably, it argues the pleading requirement does not exist. According to Emmerich, it needs to allege no more than "[d]istribution with altered copyright management information." Opp'n 11. That reads the second scienter requirement out of the statute. *See* 17 U.S.C. § 1202(b) (requiring a defendant to "know[], or . . . hav[e] reasonable grounds to know, that it[s actions] will induce, enable, facilitate, or conceal an infringement").

Emmerich simply does not state a § 1202 claim merely by "alleg[ing] the existence of CMI

on its images," Google's "removal of that information," and that Google's removal was done "intentionally for display within its newsfeed." Opp'n 11-12. That speaks only to § 1202(b)'s first scienter requirement. As an unbroken line of authority recognizes, and as the statutory language plainly requires, Emmerich must ***also*** plead facts showing that Google knew that the supposed CMI removal would induce, enable, facilitate, or conceal copyright infringement. *See Dow Jones*, 749 F. Supp. 3d at 786-87 (plaintiff must allege second scienter requirement to plead a § 1202(b) claim); *accord Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751, at *2 (W.D. Tex. Apr. 13, 2022) (same); *Intercept*, 767 F. Supp. 3d at 29 (same). By pretending the second scienter requirement does not exist, Emmerich implicitly concedes it cannot plead facts to satisfy it. That necessitates dismissal of its § 1202 claim.[6]

### B. Emmerich Cannot Satisfy § 1202(b)'s Second Scienter Requirement.

Emmerich's problems on the second scienter requirement run deeper. As Google showed in its opening brief, Emmerich cannot possibly show that Google had the requisite state of mind from what Emmerich pleaded and what is properly before the Court on this motion. That means the § 1202 claim should be dismissed with prejudice. As Emmerich concedes, Google prominently displays the sources of the images in the Google News feed by "[i]ncluding the name of the publication and [its] logo." Opp'n 12. And Google links the images directly to the original articles on Emmerich's own websites, where any associated CMI would reside. *See* Mot. 13. Under those circumstances, Google cannot have known that its actions would induce, enable, facilitate, or conceal copyright infringement. *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1121-22 (C.D.

[6] The second scienter requirement was not even at issue in the cases Emmerich cited, so the court had no opportunity to consider whether the defendant knew or had reason to know its actions would encourage copyright infringement. *Cf. Interplan Architect, Inc. v. C.L. Thomas, Inc.*, 2009 WL 6443117, at *2-5 (S.D. Tex. Nov. 13, 2009); *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 774 (S.D. Tex. 2017).

Cal. 1999); *Pinterest*, 2022 WL 4348460, at *7("[I]t makes no sense to infer that Pinterest had the requisite scienter for Section 1202(b)" where indicia of copyright ownership was "visible on Pinterest's service and there are links back to the original source of those images"); *see also* Mot. 13-15. *Arriba Soft* put the proposition succinctly: a party lacks the requisite scienter as a matter of law where it displays "the name of the Web site from which [it] obtained the image, where any associated copyright management information would be available, and an opportunity to link there." 77 F. Supp. 2d at 1122.

Google News' attribution and linking features align this case with *Arriba Soft* and *Pinterest*, and Emmerich's treatment of both cases badly misses the mark. Emmerich ignores the relevant holding in *Arriba Soft*, a case involving a search engine, arguing instead that the case is inapposite because Google does not warn its users about restrictions on downstream usage of Google News images. Opp'n 12. That simply was not part of the holding that governs here. True enough, *Arriba Soft* implied that the absence of a warning to users of a search engine could "cause [those] users to infringe Plaintiff's copyrights," *Arriba Soft*, 77 F. Supp. 2d at 1122, but Emmerich has not even asserted a theory based on Google News ***users'*** alleged infringement, let alone identified an actual instance of such infringement. *See* Dkt. No. 1 ¶¶ 32-33 (pleading only a concealment theory); *see also Stevens*, 899 F.3d at 674 (second scienter element requires "specific allegations as to how identifiable infringements will be affected"). All that mattered to the court was the plaintiff's failure to show that "users of Defendant's site were any more likely to infringe his copyrights, any of these users did infringe, or Defendant should reasonably have expected infringement," especially since those users were "given the name of the Web site from which Defendant obtained the image, where any associated copyright management information would be available, and an opportunity to link there." *Arriba Soft*, 77 F. Supp. 3d at 1122.

Nor does it matter that the case was decided at summary judgment. Google relies on *Arriba Soft* for its legal rule: that communicating the source of an image, and linking back to the source, dispels any inference of scienter. *See* Mot. 14. Emmerich admits in its complaint that Google communicates the name and logo of the newspapers whose stories are linked in the Google News feed, Dkt. No. 1 ¶ 36, so no discovery is needed on that point. The legal rule from *Arriba Soft* should govern.[7]

Emmerich's response to *Pinterest* is even farther afield. It is simply making up the notion that *Pinterest's* outcome depended on the size or resolution of the images at issue or the type of CMI that was allegedly removed. Those issues did not play any role whatsoever in the court's conclusion, on a motion to dismiss, that a § 1202(b) claim was "not plausible on its face" where Pinterest, an image-sharing service, "link[s] users to the original source of the image." *Pinterest*, 2022 WL 4348460, at *7. Whether the CMI is a watermark or metadata, the point is the same: Google clearly communicates the source and links its users to the original image, where the CMI—of any type—would be readily available. This precluded an inference of scienter in *Arriba Soft* and *Pinterest*, and it does so here too. *See* Mot. 15.

Emmerich's lead citation, *Intercept Media, Inc. v. OpenAI, Inc.*, also illustrates why Google could not have acted with knowledge or reason to know that its actions would encourage copyright infringement. There, the court contrasted a faultless "reader who removes CMI to

[7] Emmerich also tries to make hay of the fact that *Arriba Soft* involved "miniature computer graphics," and asserts that the images in Google News are not thumbnails. Opp'n 12. Whatever theoretical relevance that might have to the defense of fair use (which, again, is not at issue in this motion), those facts do not matter to the operative point of law. Further, for whatever it is worth, the screenshots included in the opposition clearly show that the Google News images ***are*** reduced in size and resolution. *See* Opp'n 7 (showing pixelated images). And the Complaint's lone example of alleged infringement plainly meets Emmerich's own definition of a thumbnail: it is a "reduced-sized and [] reduced resolution version[] of a larger image, used primarily to identify, index, preview, or link to" the Emmerich article included in the Google News feed. *Id.* at 6; *see* Dkt. No. 1 ¶ 36.

increase the readability of an article" with an "unscrupulous company" that removes "critical CMI" to "pass[] off" another's work as its own. 767 F. Supp. 3d at 30 n.8. Only the latter raises the specter of § 1202(b) liability, because the second scienter requirement "isolates the kind of conduct that is the concern of copyright law—knowing interference with a copyright-protected work that may risk the legal protections afforded that work." *Id.* at 30. The problem for Emmerich is that it does not and cannot allege that Google "passe[s] off" anything as its own where Google includes the name of the Emmerich newspaper that published the photograph and that newspaper's logo directly above the headline of the story containing the photograph, and where clicking on the photograph takes a user directly to the source of the image on an Emmerich website. *See* Mot. 13. By conceding that Google attributes Emmerich's newspapers and links back to them, Emmerich's own allegations preclude any inference that Google acted with the requisite state of mind.

Emmerich's other cases further undermine its claim. For example, in *Recif Resources, LLC v. Juniper Capital Advisors, L.P.*, the defendant was found to have acted with the requisite state of mind precisely because it "intentionally removed [plaintiff's] CMI and then intentionally added [its] own logo to the Copyrighted Works," thereby passing them off as defendant's own. 2020 WL 5739138, at *10 (S.D. Tex. Sept. 24, 2020). Likewise, in *Mango v. BuzzFeed, Inc.*, the defendant distributed the plaintiff's images "without crediting him" and instead "include[d] a false attribution" to a different entity. 970 F.3d 167, 169, 173 (2d Cir. 2020). And in *Shihab v. Complex Media, Inc.*, the defendant removed watermarks from the plaintiff's images and then posted the modified images on its own social media account, sometimes with attribution and sometimes without—and never with links back to the plaintiff's website. 2022 WL 3544149, at *5 (S.D.N.Y. Aug. 17, 2022). The court found that the plaintiff had plausibly alleged the second scienter requirement because the defendant's removal of plaintiff's watermarks, followed by its

distribution of the stripped images on social media, concealed and facilitated the defendant's own infringement. *Id.* Here, by contrast, Google removed none of Emmerich's identifying information—it simply showed a thumbnail of the exact same image Emmerich made available at the Image URL, without any modification—and in fact ***added*** the newspaper's name, logo, and a link to the source article. *Supra* 10-11. That does not foster infringement, much less knowingly so.

* * *

Emmerich cannot plausibly allege that Google knew or had reason to know that its actions would induce, enable, facilitate, or conceal copyright infringement because it communicates the source of Emmerich's images—and links its users directly to them. *See Arriba Soft*, 77 F. Supp. 2d at 1121-22; *Pinterest*, 2022 WL 4348460, at *2. Accordingly, Emmerich's § 1202(b) claim fails.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss Count II of the Complaint with prejudice.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Chelsea Lewis*

**FORMAN WATKINS & KRUTZ LLP**

CHELSEA C. LEWIS (MSB NO. 105300)
chelsea.lewis@formanwatkins.com
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
Telephone: (601) 960-8600
Facsimile: (601) 960-8613

**WILSON SONSINI GOODRICH & ROSATI PC**

BRIAN M. WILLEN (admitted *pro hac vice*)
bwillen@wsgr.com
31 W. 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

THOMAS R. WAKEFIELD (admitted *pro hac vice*)
twakefield@wsgr.com
One Market Plaza, Spear Tower, Suite 330
San Francisco, California 94105-1126
Telephone: (415) 849-2000
Facsimile: (866) 974-7329

*Counsel for Defendant Google LLC*